IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-CR- 04025-BCW |
| ) | |
| ) | |
| TAVION RESHOND JONES, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Pending before the Court is defendant Tavion Reshond Jones' Motion to Suppress Evidence. (Doc. 18). The Government has filed its response in opposition. (Doc. 24). No reply brief was filed and the time to do so has expired. The Court held a hearing on this matter on August 26, 2021. (Doc. 31). With leave of Court, the Defendant and Government subsequently filed supplemental briefing. (Doc. 32, 33). The issue is now ripe for consideration. For the reasons that follow, it is recommended that the motion be DENIED.

**I. Findings of Fact**

On the basis of the evidence presented at the evidentiary hearing, the Court submits the following proposed findings of fact.

**Encounter with Tavion Jones**

1. Officer Jacob Roberts has served as a patrol officer with the Columbia Police Department ("CPD") for three years. (Tr. 3:17-20).

2. In the early morning hours of Christmas Eve 2020, while conducting routine patrol, Officer Roberts observed a gray Ford Mustang parked on the 1600 block of Towne Drive, with no visible license registration on the front or back of the vehicle. (Tr. 3:25-4:24, 21:23-25).

3. Officer Roberts believed that a car parked on a public street without proper license plates is a violation of Columbia, Missouri ordinance that states any vehicle parked on public streets, highways, or roadways must be properly registered. (Tr. 5:4-9, 16:24-17:3).

4. Officer Roberts parked his patrol vehicle and walked toward the Mustang to further investigate. (Tr. 5:23-24, 6:15-16).

5. Officer Roberts observed Mr. Jones exit the Mustang. (Tr. 6:17-25, 7:1-5).

6. Officer Roberts asked Mr. Jones if he lived in the area and if the vehicle belonged to him. (Gov't Exhibit No. 1). As Mr. Jones continued to walk to a nearby apartment, he replied that he lived nearby and that he owned the vehicle. (Gov't Exhibit No. 1; Tr. 30:22-25).

7. Officer Roberts asked Mr. Jones to come closer to him and to not walk away. (Gov't Exhibit No. 1). However, as Officer Roberts approached Mr. Jones, Mr. Jones ran away. (Gov't Exhibit No. 1; Tr. 8:19-9:9, 35:15-20).

8. Officer Roberts and another officer chased Mr. Jones but were unable to locate him. (Tr. 8:17-25, 9:1-14).

9. CPD asked residents in the area about Mr. Jones' whereabouts but were unable to locate him. (Tr. 9:4-14).

10. Officer Roberts returned to the Mustang and attempted to verify the vehicle's registration. (Tr. 9:15-17, 12:10-15). A license plate was not on file for the vehicle. (Tr. 12:13-15).

11. As Officer Roberts stood beside the vehicle and looked inside through the windows with his flashlight illuminating the vehicle, he observed a handgun in plain view lying on the floorboard. (Tr. 10:7-13).

12. Accordingly, Officer Roberts requested a canine unit to come to the scene and conduct an open-air sniff of the vehicle. (Tr. 13:3-5).

13. Boone County Sheriff's Office Canine Deputy Justin Ludwig and his canine arrived and conducted an open-air sniff of the Mustang. (Tr. 49:2-9, 50:6-7, 61:4-12). The canine positively indicated that drugs were present in the vehicle. (Tr. 64:17-25¸ 65:1-5, Gov't Exhibit No. 2).

14. Officer Roberts then requested a tow truck to come to the scene to open the vehicle so he could conduct a search. (Tr. 13:14-21).

15. Upon conducting the search, Officer Roberts discovered a handgun inside the vehicle, which had been reported as stolen. (Tr. 13:21-25, Tr. 14:1).

16. Officer Roberts did not discover any other contraband in the vehicle during the search. (Tr. 15:15-17).

17. Officer Roberts also discovered medical records inside the vehicle with Mr. Jones' name on them. (Tr. 14:17-25, 15:1-5).

### III. Discussion

Mr. Jones was indicted by a federal grand jury on a charge of Felon in Possession of a Firearm on April 14, 2021. (Doc. 1). Mr. Jones filed his Motion to Suppress Evidence on July 11, 2021, challenging the constitutionality of the search of the Mustang. (Doc. 18).

**A. Legal standard**

"A Fourth Amendment seizure occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *United States v. Flores-Lagonas*, 993 F.3d 550, 559 (8th Cir. 2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "It is not sufficient for the police to only *attempt* to stop the individual; police must *actually* stop him." *Flores-Lagonas*, 933 F.3d at 560 (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Specifically, "[t]here is no seizure without actual submission." *Johnson v. City of Ferguson*, 926

F.3d 504, 506 (8th Cir. 2019) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). Moreover, "[a] seizure does not occur 'simply because a police officer approaches an individual and asks a few questions,' so long as 'a reasonable person would feel free to disregard the police and go about his business.'" *United States v. Carpenter*, 462 F.3d 981, 985 (8th Cir. 2006) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and request to examine his or her identification." *Carpenter*, 462 F.3d at 985 (citing *Bostick*, 501 U.S. at 435). "Without a stop, a reasonable suspicion analysis is unnecessary." *Flores-Lagonas*, 933 F.3d at 560.

A reasonable suspicion analysis is necessary if officers conduct a *Terry* stop. *United States v. Quinn*, 812 F.3d 694, 697 (8th Cir. 2016) (citing *Terry*, 392 U.S. at 21). "Where a police officer has reasonable suspicion that criminal activity may be afoot, the officer may briefly stop an individual and make reasonable inquires aimed at confirming or dispelling the suspicion." *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993); *Terry*, 392 U.S. at 30).

If instead of a brief stop of an individual, officers conduct a warrantless vehicular search under the automobile exception, probable cause must exist. *United States v. Shakelford*, 830 F.3d 751, 753 (8th Cir. 2016) (citing *Arizona v. Gant*, 566 U.S. 332, 347 (2009)). "Probable cause sufficient to justify a search exists where, in the totality of circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005)). In making the probable cause determination, courts are to "apply a common sense approach and consider all relevant circumstances." *Vore*, 743 F.3d at 1179 (quoting *Kennedy*, 427 F.3d at 1141). The automobile exception "extends to the 'automobile and the containers within it

where [officers] have probable cause to believe contraband or evidence is contained.'" *United States v. Keck*, 2 F.4th 1085, 1089 (8th Cir. 2021) (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)). Officers "may seize an item inside a car if a 'fair probability' exists to believe the item is or contains evidence of a crime." *Keck*, 2 F.4th at 1089 (citing *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017)). Moreover, "[t]he automobile exception may apply even when there is little to no chance that the vehicle will be moved or its contents destroyed." *United States v. Soderman*, 983 F.3d 369, 376 (8th Cir. 2020) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441-42 (1973)). "Officers armed with probable cause 'may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody.'" *Soderman*, 983 F.3d at 376 (quoting *United States v. Bettis*, 946 F.3d 1024, 1030 (8th Cir. 2020)). Probable cause is not evaluated in hindsight. *Florida v. Harris*, 568 U.S. 237, 249 (2013). Its determination does not depend "on what a search does or does not turn up." *Id.* (citing *United States v. Di Re*, 332 U.S. 581, 595 (1948)).

In evaluating whether probable cause existed based on a canine's alert to drugs, the Supreme Court held that "[a] defendant . . . must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer, or by introducing his own fact or expert witness." *Harris*, 568 U.S. at 247. A "defendant, for example, may contest the adequacy of a certification or training program…" *Id.* In *Harris*, the defendant contested the reliability of the canine's detection skills because the canine's alert to drugs during a traffic stop established probable cause for a warrantless search of the defendant's vehicle. *Id.* at 248. The Court reasoned that probable cause is based on "whether all the facts… viewed through the lens of common sense… make[s] a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* While an alert from a reliable canine can be sufficient to establish

probable cause, courts must take "into account the totality of the circumstances present at the scene…" *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007). The canine's accuracy is just "one of the factors [courts] consider in the totality of the circumstances calculation." *Id.*

Lastly, "abandoned property does not implicate the Fourth Amendment..." *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). An individual abandons their property when they "[relinquish their] reasonable expectation of privacy so that the search and seizure is valid." *Id.* (quoting *United States v. Hoey*, 983 F.2d 890, 892-93 (8th Cir. 1993)). "This determination is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property." *Tugwell*, 125 F.3d at 602 (quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir.1986).

**B. No reasonable suspicion of criminal activity was necessary when Officer Roberts interacted with Mr. Jones because Mr. Jones was never seized.**

Mr. Jones maintains that law enforcement did not have reasonable suspicion to initiate contact with him. (Doc. 18 at 6). The Court recommends a finding that Mr. Jones was never seized for purposes of the Fourth Amendment, and therefore, no reasonable suspicion analysis is necessary.

A "seizure occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Flores-Lagonas*, 993 F.3d at 559 (quoting *Terry*, 392 U.S. at 19 n.16). Here, Officer Roberts never exerted any physical force upon Mr. Jones. Officer Roberts only tried to briefly question Mr. Jones. In addition, Mr. Jones never submitted to Officer Roberts' authority. For an individual to be seized, they must actually submit to the officer's authority. *Johnson*, 926 F.3d at 506. There is no indication that Mr. Jones actually submitted to Officer Roberts' authority. Mr. Jones never stopped walking while Officer Roberts spoke with him, and he eventually fled from the scene. Moreover, "[a] seizure does not occur

'simply because a police officer approaches an individual and asks a few questions...'" *Carpenter*, 462 F.3d at 985 (quoting *Bostick*, 501 U.S. at 434).  Thus, Officer Roberts did not seize Mr. Jones by approaching him and asking for his identification.  Accordingly, this Court recommends denying Mr. Jones' claim that Officer Roberts lacked reasonable suspicion because "a reasonable suspicion analysis is unnecessary" when Mr. Jones was never seized. *Flores-Lagonas*, 933 F.3d at 560.

**C. Probable cause existed when Officer Roberts conducted a warrantless search of the Ford Mustang.**

Mr. Jones maintains that once Officer Roberts discovered the handgun in the Mustang, "he should have obtained a search warrant to search for any paperwork that would have linked the alleged stolen firearm to the last occupant of the vehicle." (Doc. 18 at 8-9).  The Court recommends a finding that a search warrant for the Mustang was unnecessary because officers could lawfully search the vehicle pursuant to the automobile exception.

The automobile exception to the warrant requirement allows officers to search a vehicle if probable cause exists. *Shakelford*, 830 F.3d at 753.  Probable cause exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Vore*, 743 F.3d at 1179 (quoting *Kennedy*, 427 F.3d at 1141).  There was a fair probability that contraband or evidence of a crime would be in the Mustang because Mr. Jones fled from the scene, the vehicle was unlicensed, a canine indicated that drugs were inside the vehicle, and Officer Roberts saw a handgun in plain view lying inside the vehicle.  Applying "a common sense approach," all of these relevant circumstances establish a fair probability that contraband or evidence of a crime would be inside the Mustang.  In addition, the fact that the search ultimately did not uncover drugs is irrelevant because probable cause is not evaluated in

hindsight. *Harris*, 568 U.S. at 249. It does not matter "what a search does or does not turn up." *Id.* (citing *Di Re*, 332 U.S. at 595).

Moreover, there is no support for Mr. Jones' assertion that the search should have ceased once Officer Roberts recovered the handgun. The automobile exception "extends to the 'automobile and the containers within it where [officers] have probable cause to believe contraband or evidence is contained.'" *Keck*, 2 F.4th at 1089 (quoting. *Acevedo*, 500 U.S. at 580). Courts have never suggested that the automobile exception is limited to items officers suspect to be evidence of a crime before the search ensues. Moreover, officers may seize any item they discover inside a vehicle if a "'fair probability' exists to believe the item is or contains evidence of a crime." *Keck*, 2 F.4th at 1089 (citing *Murillo-Salgado*, 854 F.3d at 418). There was a fair probability that the paperwork that Officer Roberts discovered inside the Mustang contained evidence of a crime because it allegedly linked Mr. Jones to the handgun found in his vehicle. Thus, Officer Roberts properly seized this paperwork.

Moreover, it is irrelevant that Officer Roberts searched the Mustang when there was little to no chance the Mustang would be mobile. The automobile exception still applied. The automobile exception applies "even when there is little to no chance that the vehicle will be moved or its contents destroyed." *Soderman*, 983 F.3d at 376 (citing *Dombrowski*, 413 U.S. at 441-42). Courts have further held that a search pursuant to the automobile exception can even occur once the car is impounded and in police custody. *Soderman*, 983 F.3d at 376 (quoting *Bettis*, 946 F.3d at 1030). Thus, if the automobile exception applies even when a vehicle is impounded, it surely also applies when the Mustang was still on the street, even if there was little to no chance the Mustang would be moved.

The Government contends Mr. Jones abandoned his vehicle, fled from the scene, had no reasonable expectation of privacy with respect to the Mustang, and thus the search did not violate the Fourth Amendment. Courts have emphasized that "abandoned property does not implicate the Fourth Amendment" because an individual "relinquished [their] reasonable expectation of privacy" when they abandoned the property. *Tugwell*, 125 F.3d at 602 (quoting *Hoey*, 983 F.2d at 892-93). "This determination is to be made in light of the totality of the circumstances, and two important factors are denial of ownership and physical relinquishment of the property." *Tugwell*, 125 F.3d at 602 (quoting *Nordling*, 804 F.2d at 1469). Here, however, Mr. Jones stated that he owned the Mustang when he briefly spoke with Officer Roberts. Hence, he claimed ownership and, despite fleeing the scene, did nothing to indicate a physical relinquishment of the property. In fact, he locked the Mustang's doors before taking off on foot. Nevertheless, since probable cause existed to search the Mustang, the search was still constitutional under the automobile exception to the warrant requirement. Accordingly, this Court recommends a finding that Officer Roberts' search of the Mustang complied with the automobile exception to the warrant requirement.

**D. Mr. Jones had the opportunity to challenge the reliability of the canine's alert to drugs inside the Mustang.**

Mr. Jones maintains that "[t]he discovery provided by law enforcement is wholly lacking the canine's training and reliability to detect illegal narcotics and the canine handler's ability to determine a positive alert to narcotics." (Doc. 18 at 8). However, the Court recommends a finding that Mr. Jones had the opportunity at the evidentiary hearing to challenge the reliability of the canine's alert to drugs inside the Mustang.

Mr. Jones asserts that "[a] defendant . . . must have an opportunity to challenge… evidence of a dog's reliability, whether by cross-examining the testifying officer… introducing his own fact or expert witness…[or]…contest the adequacy of a certification or training program." (Doc. 18 at 2). However, *Harris* holds that "[a] defendant . . . must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer, or by introducing his own fact or expert witness." *Harris*, 568 U.S. at 247. In addition, a "defendant, for example, may contest the adequacy of a certification or training program…" *Id.* Mr. Jones had an opportunity to challenge the canine's reliability by cross-examining Deputy Ludwig or introducing his own fact or expert witness at the evidentiary hearing held on August 26, 2021. The Court in *Harris* did not hold that the Government must always provide a canine's credentials, but only that the defendant "have an opportunity to challenge such evidence of a dog's reliability…" *Id.* Here, Mr. Jones had the opportunity to challenge the canine's alert at the evidentiary hearing. And the Government presented the canine's credentials, certifications, and training at the hearing.

Furthermore, probable cause to search the vehicle existed even without the canine's alert to narcotics in the Mustang. In *Harris*, the Court emphasized that the defendant should have an opportunity to contest the reliability of the canine's drug detection skills because probable cause was established based almost solely on the canine's alert. *Id.* at 248. However, in this case, and as previously discussed, probable cause to search the Mustang was not based only on the canine's alert. Instead, probable cause to search the Mustang was established by a "totality of the circumstances present at the scene..." *Donnelly*, 475 F.3d at 955. This included that Mr. Jones fled from police, a handgun was inside the vehicle in plain sight, and the vehicle was unlicensed. The canine's alert to drugs was just "one of the factors" and the remaining totality of the circumstances

establish probable cause. *Id.* Accordingly, the Court recommends a finding that Mr. Jones had an opportunity to contest the reliability of the canine's alert.

## Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order DENYING Defendant Tavion Reshond Jones' Motion to Suppress Evidence.

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation that are accepted or adopted by the District Judge, except on the grounds of plain error or manifest injustice.

Dated this 1st day of September 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge